UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE ) | |
| COMPLAINT OF OSAGE MARINE ) | |
| SERVICES, INC. FOR ) | No. 4:21 CV 347 RWS |
| EXONERATION FROM, OR ) | |
| LIMITATION OF LIABILITY. ) | |

## **MEMORANDUM AND ORDER**

This case arises out of Plaintiff Osage Marine Services, Inc.'s Complaint in Admiralty seeking limitation of liability for the death of its deckhand Casey Redmond. The case is now before me on a motion for summary judgment filed by Osage. In its motion, Osage argues that the limitation fund may not be increased pursuant to the "flotilla doctrine." For the reasons discussed below, Osage's motion will be granted.

## **BACKGROUND**[1]

At all times relevant to this case, Osage Marine Services was the owner or owner *pro hac vice* of the Motor Vessel RAIN MAN. On December 15, 2019, Osage employed Casey Redmond as a deckhand. While working that day as a member of

---

[1] The information in this section is taken from the undisputed facts in the record and the parties' exhibits and statements of uncontroverted material facts, ECF Nos. 95, 98 & 101, to the extent they are not specifically controverted by the opposing party as required by Local Rule 7–4.01(E).

the M/V RAIN MAN's crew,[2] Redmond fell into the Mississippi River. Redmond did not re-surface after entering the water and his body was never found. On June 17, 2020, the Circuit Court of Saint Louis County, Missouri ordered the state registrar to issue a presumptive death certificate for Redmond, identifying the date of presumed death as December 15, 2019.

On March 2, 2021, Candace Love, Redmond's mother, notified Osage of a potential wrongful death claim by letter. Osage then filed this action for exoneration from or limitation of liability pursuant to 46 U.S.C. § 30501–30512 on March 18, 2021. In its complaint, Osage seeks to limit its liability to the value of the M/V RAIN MAN. Osage claims the M/V RAIN MAN's value does not exceed the sum of $2,000,000.00. ECF No. 1 at ¶ 11. In her answer, Love asserts that the proposed limitation fund should be increased pursuant to the flotilla doctrine. ECF No. 8 at ¶¶ 24–25.

Osage's business consists of operating harbor tugboats, including the M/V RAIN MAN, to move barges into and out of barge fleets that are owned by Consolidated Grain and Barge Co. ("CGB"). Osage performs its work pursuant to

---

[2] On the day of Redmond's accident, he worked aboard two separate Osage vessels in the same shift. The M/V Jackie Sue, which Redmond worked aboard earlier in his shift, had a mechanical breakdown and was tied up to Osage's dock at the time of the accident.

a Fleet Operating Agreement with CGB. *See* ECF No. 55-3. Osage is compensated annually under this contract.

Osage's vessels are assigned to specific fleets at different locations[3] and different vessels are used for different tasks. At the time of Redmond's accident, Osage's St. Louis personnel operated five boats during the day and four boats at night.

The basic facts of Redmond's accident occurred as follows: Around 1:30 a.m. on December 15, 2019, the M/V RAIN MAN's crew was dispatched to help secure two barges into the Lower Bellerive Fleet at Mile 172 of the Upper Mississippi River at St. Louis, Missouri. The M/V RAIN MAN's pilot transported the crew to the barge fleet and the crew disembarked from the M/V RAIN MAN onto Barge AGS-866B. Redmond followed his crewmate, Dalton Morckel, off the M/V RAIN MAN and onto the barge. After Morckel was on the barge, he heard Redmond's tools bounce off the barge and then heard Redmond splash in the water. After hearing the splash, Morckel briefly observed Redmond floating in the river before he went under the water.

The barges that the M/V RAIN MAN was dispatched to help secure were being delivered to the fleet by the M/V MIRANDA PAIGE, a harbor tug operated

---

[3] At the time of the accident, Osage had fleets in St. Louis, Missouri; Cape Girardeau, Missouri; Hennepin, Illinois; and Naples, Illinois.

3

by a company other than Osage. Osage did not own or operate the barges that were being secured into the fleet or any of the barges already located in the fleet. Apart from the M/V RAIN MAN, Osage did not own or operate any vessels helping secure the barges in the fleet or any vessels located at the fleet.

In its motion for summary judgment, Osage argues that the limitation fund may not be increased under the flotilla doctrine to reflect the value of Osage's other vessels because the M/V RAIN MAN was its only vessel involved in the operation taking place at the time of Redmond's accident. Love responds that the limitation fund should be increased to reflect the value of Osage's entire fleet of harbor tugs because all of Osage's vessels were engaged in a single enterprise under its Fleet Operating Agreement with CGB.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Cox v. First Nat'l Bank*, 792 F.3d 936, 938 (8th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). In ruling on a motion for summary judgment, I must "'view the evidence in the light most favorable to the opposing party' and draw all reasonable inferences in favor of that party." *Id.* (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)). A party moving for summary judgment bears the initial burden of informing me of the basis for its motion and identifying the portions of the record it believes show the absence of a

4

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Upon a properly supported motion, the opposing party "must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Togerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Celotex*, 477 U.S. at 324)).

## DISCUSSION

Under the Limitation of Liability Act, a vessel owner may limit their liability for damage or injury to the value of the vessel and its freight if the damage or injury occurred without the owner's privity and knowledge. *In re Am. River Transp. Co.*, 800 F.3d 428, 432 (8th Cir. 2015) (citing 46 U.S.C. § 30505). In cases involving multiple vessels, the limitation fund may be increased under the "flotilla doctrine" to include "the value of all the vessels involved in the completion of performance of a contract . . . when those vessels are: subject to common ownership; engaged in a single enterprise; and under a single command." *Valley Line Co. v. Ryan*, 771 F.2d 366, 376 (8th Cir. 1985).

At issue here is the second element of the flotilla doctrine: whether Osage's fleet was engaged in a single (or common) enterprise at the time of Redmond's accident.[4] Osage argues that it is entitled to summary judgment regarding Love's

---

[4] Osage does not dispute that its vessels are subject to common ownership and under its single command.

5

assertion of the flotilla doctrine because the M/V RAIN MAN was the only Osage vessel involved in Redmond's accident.  In opposition, Love argues that securing barges is a single enterprise that Osage's entire fleet was engaged in pursuant to the Fleet Operating Agreement between Osage and CGB.  Love also argues that the vessels involved in Osage's rescue attempt should constitute a flotilla, that Osage was not an owner for the purposes of the Limitation Act, that Osage owned the barges for the purposes of the Limitation Act, and that Osage's motion is premature.

### A.    Common Enterprise

Interdependence is a "key factor in determining whether vessels are contractually engaged in common enterprise." *In re Tara Crosby, LLC*, Civ. No. 17-5391, 2020 WL 13443869, at *3 (E.D. La. Feb. 26, 2020) (citing *Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co.*, 377 F.2d 724, 727 (5th Cir. 1967)). In other words, the vessels in a flotilla must be "working with each other" for the flotilla doctrine to apply. *In re Tara Crosby*, 2020 WL 13443869, at *3 (citing *In re Drill No. 2*, 454 F.2d 408, 411 (5th Cir. 1792)); *see also In re Norfolk Dredging Co.*, 279 F. Supp. 2d 674, 675 (E.D.N.C. 2003) (quoting THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW 15-7, n.13 (3d ed. 2003)) (explaining that an entire flotilla should be surrendered "when the vessels are operated as a unit").

The interdependence factor is most often satisfied in dredging cases.  For example, *In re Board of Commissioners*, 575 F. Supp. 3d 669 (E.D. La. 2021),

6

provides a helpful illustration of interdependence.  In that case, two deckhands were injured on the M/V HOGG, one of several vessels engaged in a dredging operation. *Id.* at 670–71, 674–75.  In addition to the M/V HOGG, the court found that "each piece of the equipment in the dredge unit perform[ed] a necessary function in the Board's dredging operations" and held that the flotilla doctrine's common enterprise element was satisfied.  *Id.* at 675–76.

The same analysis is present in *In re Weeks Marine*, No. 8:00CV185, 2000 WL 33389207 (M.D. Fla. Nov. 6, 2000).  In that case, a crewmember was injured aboard the M/V BAYOU BLUE, which transported a crew to the Dredge RS WEEKS for a dredging project.  *Id.* at *1.  The court held that a common venture existed, and thus included both the M/V BAYOU BLUE and the Dredge RS WEEKS in the limitation fund because both were "necessary to the performance" of the project.  *Id.* at *3–5; *see also In re Brown & Root*, 267 F. Supp. at 592 (finding that several vessels were engaged in a common enterprise because each "was playing a necessary and important part in the work"); *In re C and C Boats, Inc.*, No. SACV 13-01420 JVS (JPRx), 2014 WL 12567148, at *4 (C.D. Cal. July 3, 2014) (including two transport vessels in the limitation fund because a contract required Plaintiff to operate both simultaneously and because both were necessary to the performance of the contract).

7

Unlike the cases discussed above, the vessels in Osage's fleet operate independently. Although Osage's harbor tugs are not interchangeable, the primary difference between the tugs in the fleet is the amount of horsepower each tug has. This means that some tugs can work with barges and in locations that others cannot. However, under the Fleet Operating Agreement, each of Osage's tugs is expected to perform functionally identical tasks, including moving barges into and out of fleets.

Osage's fleet is not like the dredging cases cited by Love, in which the plaintiffs operated several different vessels for different tasks as part of the same project. For example, in *In re Board of Commissioners*, the plaintiff operated several vessels to fulfill a dredging contract. *In re Bd. of Comm'rs*, 575 F. Supp. 3d at 674–675. Those vessels included a cutter suction dredge barge, a non-propelled anchor barge, floating pipeline segments, and a self-propelled anchor handling barge. *Id.* The vessels operated interdependently as a unit because the first three could not be moved without the self-propelled anchor handling barge. *Id.* at 675–676. In contrast, each of Osage's vessels can be used without relying on its other harbor tugs. As a result, Osage's entire fleet was not engaged in a common enterprise under the flotilla doctrine.

In addition to the interdependence factor, "there is also a temporal limit to which vessels may be considered contractually engaged in a common enterprise." *In re Tara Crosby*, 2020 WL 13443869, at *4. Under this factor, "the vessels to be

8

surrendered are those devoted to performance of the contract at the particular time when the fault which causes the loss is committed." *In re Franz*, 7 F. Supp. 3d 238, 243 (E.D.N.Y. 2014) (citing *George W. Pratt*, 76 F.2d 902, 903 (2d Cir. 1935)); *see also In re Norfolk Dredging*, 279 F. Supp. 2d at 675 (explaining that "a claimant must demonstrate contribution to the injury—by act or by omission—on the part of a vessel the claimant seeks to have brought into the limitation").

The temporal factor is well-explained by the facts of *George W. Pratt*. In *George W. Pratt*, the claimant sought damages for the sinking of a tank barge while in tow of the tug Pratt. 76 F.2d at 902. The plaintiff was towing the barge pursuant to a contract with the claimant and used three of its tugs in performing the agreement. *Id.* The claimant sought to include all three tugs in the limitation fund. *Id.* However, the United States Court of Appeal for the Second Circuit found that "no tug other than the Pratt was being used to perform the towage contract when the Pratt's negligence occurred." *Id.* at 904. As a result, the court upheld the district court's ruling that only the tug Pratt should be included in the limitation fund. *Id.*

In this case, it is undisputed that the M/V RAIN MAN was the only Osage vessel involved in Redmond's accident. Although Redmond had been aboard the M/V Jackie Sue earlier in his shift, that vessel played no role in the operation during which the accident occurred. As a result, there is no basis for any other vessels in Osage's fleet to be brought into the limitation fund. *Cf. Murray v. N.Y. Cent. R.R.*

9

*Co.*, 287 F.2d 152, 154–55 (2d Cir. 1961) (distinguishing a dredging case and holding that "only the tug and barge involved in the accident were required to be surrendered" when an accident involved the movement of a single barge by a single tug).

### B.   Rescue Attempt

Love argues that the vessels involved in Osage's rescue attempt should be included in the flotilla for purposes of limitation. Osage did employ several of its boats in a rescue attempt, as is required by general maritime law. *See Caminiti v. Tomlinson Fleet Corp.*, Nos. C 71-327; C 71-328, 1979 WL 6504710 (N.D. Ohio June 28, 1979). However, Love offers no legal support for the proposition that vessels involved in a rescue operation should be considered "offending vessels" under the Limitation Act. As a result, Love's argument on this point fails.

### C.   Ownership

Love further argues that Osage is not entitled to limitation because it was not an "owner" of Barge AGS 866B and because the M/V RAIN MAN was not causally related to Redmond's accident. Love is free to argue that Osage is not entitled to limitation on this point, but these arguments are not relevant to Osage's motion regarding the flotilla doctrine. Regardless, the M/V RAIN MAN was involved in Redmond's accident as he was a member of its crew and it transported him to Barge AGS 866B to assist with the operation.

Love also argues that the barges not owned by Osage should be included in the limitation fund because Osage had sufficient ownership, control, and command of those vessels. However, Osage's claim for limitation is based on the M/V RAIN MAN, the offending vessel and of which Osage is an owner *pro hac vice*. Love concedes that Osage does not own the barges involved in the accident. ECF No. 97 at 4. Regardless of whether those barges were under Osage's single command at the time of the accident, they were not subject to common ownership with the M/V RAIN MAN. As a result, the barges cannot be included in the limitation fund. *See Valley Line*, 771 F.2d at 376 (explaining that common ownership is a necessary element of the flotilla doctrine).

**D.     Prematurity**

Love's final argument in opposition to Osage's motion is that the motion is premature. Courts typically wait until trial to make a final decision about increasing the limitation fund. *See, e.g.*, *In re Walsh Constr. Co.*, No. 4:13CV2526 HEA, 2014 WL 3956557, at *6 (E.D. Mo. Aug. 13, 2014). This is typically true when a claimant files a motion to increase the limitation fund and the issues involve valuations and insurance information. However, Osage's motion for summary judgment regards the flotilla doctrine and the role of vessels in the accident, not valuation. There is no dispute of material fact as to the issue of which vessels were involved in the accident. As a result, the motion is not premature.

11

## CONCLUSION

For the foregoing reasons, the flotilla doctrine is inapplicable to this case and Osage's motion for summary judgment will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Osage Marine Services, Inc.'s motion for summary judgment [94] is **GRANTED**.

 

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 16th day of January 2025.